# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**THEODORE BENNETT, JR.,**      :
                               :

         **Plaintiff,**            :        **CIVIL ACTION FILE NO.**
                               :        **1:10-CV-00910-TWT-AJB**

         **v.**                        :
                               :

**WACHOVIA CORPORATION,**     :
                               :

         **Defendant.**            :

## ORDER FOR SERVICE OF
## <u>REPORT AND RECOMMENDATION</u>

Attached is the Report and Recommendation of the United States Magistrate

Judge made in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b),

LR 72.1(B), (D), NDGa, and Standing Order 08-01 (N.D. Ga. June 12, 2008).  Let the

same be filed and a copy, together with a copy of this Order, be served upon counsel

for the parties or, if a party is not represented, upon that party directly.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any,

to the Report and Recommendation within **fourteen (14)** days of service of this Order.

Should objections be filed, they shall specify with particularity the alleged error(s)

made (including reference by page number to any transcripts if applicable) and shall be

served upon the opposing party.  The party filing objections will be responsible for

obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this ___24th___ day of ___January___, 2012.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **THEODORE BENNETT, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:10-CV-00910-TWT-AJB** |
| **v.** | : | |
| | : | |
| **WACHOVIA CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

This matter is now before the Court on Defendant's Motion for Summary

Judgment, [Doc. 27], and Defendant's request for attorneys' fees, [Doc. 40 at 13-14].

For the reasons set forth herein, the undersigned **RECOMMENDS** that:

(1) Defendant's motion for summary judgment be **GRANTED**; and (2) Defendant's

request for attorneys' fees be **DENIED**.

## I. BACKGROUND

### A. Facts

As required when considering a motion for summary judgment, the Court has

viewed the evidence and factual inferences in the light most favorable to Plaintiff, the

1

AO 72A
(Rev.8/8
2)

nonmoving party. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11ᵗʰ Cir. 1991) (en banc). To the extent that material facts are in dispute, the Court has resolved the disputes in Plaintiff's favor. *See Vaughan v. Cox*, 343 F.3d 1323, 1326 n.1 (11ᵗʰ Cir. 2003).

Few facts are in dispute in this matter, however. In support of its summary judgment motion, Defendant Wells Fargo Advisors[1] submitted a statement of material facts to which it contends that there is no genuine issue to be tried. [*See* Doc. 27-1]. Plaintiff Theodore Bennett, Jr., responded to Defendant's statement of facts, purporting to deny the majority of Defendant's factual assertions, but he did not point to any evidence in the record to support his denials. [*See* Doc. 35, *passim*]. The mere denial of an asserted material fact is not sufficient to controvert that fact; it must be controverted by admissible evidence. LR 56.1B(1), NDGa. Therefore, to the extent that Plaintiff challenges Defendant's statements of material fact by denying them without presenting contradicting evidence, those statements of material fact are deemed to have been admitted. *See* LR 56.1B(2), NDGa (providing that the Court will deem

---

[1] Although Defendant is named as "Wachovia Corporation" in the complaint, it asserts that it is now known as "Wells Fargo Advisors." [Doc. 6 at 1]. Because the parties refer to Defendant as "Wells Fargo" in their summary judgment documents, the Court will do the same in this Order.

AO 72A
(Rev.8/8
2)

each of the movant's facts as admitted unless the responding party "(i) directly refutes the movant's fact with concise responses supported by specific citations to evidence . . .; (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact," is immaterial, or otherwise fails to comply with LR 56.1B(1)); Fed. R. Civ. P. 56(e)(2) (providing that "[i]f a party . . . fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed for the purposes of the motion"); *Garland v. Advanced Med. Fund, L.P., II*, 86 F. Supp. 2d 1195, 1199-1200 & n.4 (N.D. Ga. 2000) (holding that statements of fact supporting and opposing summary judgment motions must cite evidence in the record or else they will not be considered and, specifically, that non-moving parties' responses to factual assertions must cite record evidence and cannot be "naked" denials); *Int'l Telecomms. Exch. Corp. v. MCI Telecomms. Corp.*, 892 F. Supp. 1520, 1531 (N.D. Ga. 1995) (holding that, at the summary judgment stage, "[a]n issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is 'merely colorable' or is 'not significantly probative' ") (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). The facts of the case, construed in the light most favorable to Plaintiff, the non-moving party, are therefore as follows.

3

Defendant is a large financial services company that operates throughout the United States. (D ¶ 1).[2] It offers financial investment advice and related services to its customers. (*Id.*). Plaintiff was employed by Defendant as a sales assistant, and in May 2007, he became a trainee in Defendant's two-year Financial Advisor in Training ("FAIT") program. (D ¶¶ 2, 5-6, 8).

Typically, each FAIT trainee is paired with an existing Wells Fargo financial advisor who agrees to partner with the trainee and act as the trainee's mentor. (D ¶ 3). The financial advisor pays a small portion of the trainee's compensation and has a financial incentive in helping the trainee become successful. (*Id.*; Deposition of Theodore Bennett, Jr., ("Pl. Dep.") [Doc. 30] at 76-78). Financial advisor Lauren Vogel agreed to act as Plaintiff's mentor and partner in the FAIT program. (D ¶¶ 19-21). Vogel permitted Plaintiff to work in one of the two Wells Fargo bank branches for which she was responsible. (D ¶ 22).

In March 2008, Kevin McCarthy moved into the role of regional manager for the region where Plaintiff was working as a FAIT trainee. (D ¶¶ 9-10). Both Vogel and Plaintiff reported directly to McCarthy. (D ¶¶ 10, 25). When McCarthy moved into

_____

[2] Those paragraphs preceded by "D" refer to paragraphs in Defendant's "Statement of Material Facts to Which It Contends That No Genuine Issue Exists to Be Tried." [Doc. 27-1].

4

AO 72A
(Rev.8/8
2)

the regional manager position, he inherited approximately thirty financial advisors and three FAIT trainees, including Plaintiff. (D ¶ 12). Of the three FAIT trainees McCarthy inherited, two were African-American, and one was white. (D ¶ 13). McCarthy subsequently hired four more trainees, one of whom was African-American, and three of whom were white. (*Id.*).

The FAIT program sets uniform monthly revenue production standards for each of the trainees. (D ¶¶ 4, 27). The standards are published at the outset of the program and increase each month of the two-year program. (*Id.*). Plaintiff, like the other trainees, had access to his production numbers. (D ¶¶ 4, 28). During his first six months in the FAIT program (through the end of 2007), Plaintiff's revenue exceeded the production standards. (D ¶ 30). In the following months, although the production standards continued to rise, Plaintiff's revenue stalled. (D ¶ 31). By the end of December 2008, his eighteenth month in the FAIT program, Plaintiff's total production was $50,721.33, compared with the goal of $135,000 and the "minimum" production standard of $101,250. (*Id.*).

On January 28, 2009, Vogel sent Plaintiff an e-mail in which she asked him for a meeting to discuss his production numbers. (D ¶ 33). In his response, Plaintiff acknowledged that his numbers "were not up to par" and stated, "I have definitely

5

learned from my mistakes and plan on doing things differently." (*Id.*). On April 1, 2009, McCarthy sent Plaintiff an e-mail with Plaintiff's FAIT production numbers attached. (D ¶ 35). In the e-mail, McCarthy wrote,

> Ted, attached is the February FAIT revenue report. Looks like you has [sic] a better March, but you are still behind on the goals. I would like to schedule a meeting for us to review your pipeline, as well as a plan to improve the numbers. Are you available to meet tomorrow afternoon? I am free after lunch, and was wondering if you had some time to meet me in my Buckhead office. Please let me know if that will work. Thanks and I look forward to seeing you. Kevin

(*Id.*). When McCarthy and Plaintiff met the next day, McCarthy told Plaintiff that his production level was not high enough to allow him to graduate from the FAIT program.[3] (D ¶ 36).

In mid-April 2009, a company director and a human resources manager held a conference call with all of the regional managers in Defendant's Investment Services Group, including McCarthy. (D ¶ 37). Among the topics covered were the state of the financial industry and what to do about financial advisors and FAIT trainees who were not meeting production standards. (*Id.*). The regional managers were told that senior management had decided that all FAIT trainees who had been in production for six

---

[3]     Plaintiff testified that he does not remember the details of the meeting. (Pl. Dep. [Doc. 30] at 144).

6

months and who were not meeting their production standards would be issued a Corrective Action and Counseling identifying their production deficiencies and would be placed on a ninety-day improvement plan. (*Id.*). Any FAIT trainee who failed to make up his or her production deficits from February and March 2009 and "fully meet" production standards in April through June 2009 would be subject to discharge. (*Id.*). The regional managers were told to apply the directive uniformly and to contact human resources or employee relations if they needed advice or assistance in implementing the directive. (*Id.*).

After the conference call, McCarthy consulted with Wells Fargo human resources and employee relations managers regarding Plaintiff's production and to insure he was in compliance with the directive discussed on the call.[4] (D ¶ 38). Then, on or about April 23, 2009, McCarthy issued a Corrective Action and Counseling to Plaintiff. (D ¶¶ 15, 38). The Corrective Action and Counseling stated that Plaintiff did not meet his February and March production goals. (D ¶ 40). It further stated that Plaintiff would be required to meet production expectations of $18,000 in April,

---

[4]     Plaintiff objects to this statement of material fact, arguing that it relies on hearsay. The factual statement, however, does not offer an out-of-court statement for the truth of the matter asserted. (*See* D ¶ 38, relying on the Declaration of Kevin McCarthy ¶ 10). Thus, the statement of material fact does not rely on hearsay, and the Court overrules Plaintiff's objection to its admissibility. *See* Fed. R. Evid. 801.

AO 72A
(Rev.8/8
2)

$19,000 in May, and $20,000 in June, and to make up for his existing $25,336 deficit. (D ¶ 41).  McCarthy did not issue a Corrective Action and Counseling to any other FAIT trainee under his supervision because none of the others were failing to meet production standards.  (D ¶ 48).

Plaintiff was unable to meet the performance standards set out in the Corrective Action and Counseling.[5]  (D ¶ 41).  On July 1, 2009, Wells Fargo terminated him for "failure to meet performance standards."  (D ¶¶ 16, 44, 46).  The company did not replace him.  (D ¶ 47).

## B.    Procedural History

On March 30, 2010, Plaintiff filed this suit, alleging (1) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 *et seq.* ("Title VII") (Count 3); and (2) race discrimination in violation of 42 U.S.C. § 1981 and Title VII (Counts 1 and 2).  [*See* Doc. 1].  Defendant filed an answer on August 26, 2010.  [Doc. 5].

After the close of extended discovery, on May 9, 2011, Defendant made the instant motion for summary judgment.  [Doc. 27].  On June 10, 2011, eight days after

---

[5]  Plaintiff's total revenue production during the two-year program was less than $64,000, compared to the program goal of $240,000.  (D ¶ 43).

AO 72A
(Rev.8/8
2)

the deadline for responding to Defendant's motion, Plaintiff—without any explanation for his failure to file a response brief—moved for an additional thirty days to respond. [*See* Doc. 31].  Despite the deficiencies in Plaintiff's motion for extension of time, the Court gave Plaintiff until June 14 to file a response brief.  [Doc. 33].  On June 15, Plaintiff filed his response to the summary judgment motion.  [Doc. 35].  Defendant filed a reply brief on June 24, in which it requested attorneys' fees for replying to the untimely and defective response brief.  [Doc. 40].  Plaintiff did not seek to respond to the request for attorneys' fees.  [*See* Dkt.].

## II.     DISCUSSION

The undersigned first turns to the merits of Defendant's motion for summary judgment and then will address Defendant's request for attorneys' fees.

### A.     Motion for Summary Judgment

#### 1.     Legal Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The movant carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."   *Rice-Lamar v. City of Fort Lauderdale*,

AO 72A (Rev.8/8 2)

232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence

AO 72A
(Rev.8/8
2)

presented." *See Anderson*, 477 U.S. at 252; *see also EPL, Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999).

## 2.    Analysis

Plaintiff alleges that he was terminated "without just cause" because of his race and in retaliation for his complaints about disparate treatment.  (Compl.[Doc. 1] ¶¶ 16-24, 28, 34, 38).  He asserts generally that unlike his white counterparts, he was not allowed to work on his FAIT partner's book of business and that when he complained, he was suddenly given a "final warning" and then was fired. (*Id.* ¶¶ 17, 22, 26-28).  He further contends that Defendant dismissed him not for missing revenue goals but instead because McCarthy wanted to replace him with a white employee and because Vogel did not want a black male to work in partnership on her book of business.  (*Id.* ¶¶ 16, 19-24).

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Title VII also makes it unlawful for an employer to retaliate against an employee because he opposed an unlawful employment practice or because he made a charge, testified, assisted, or participated in any manner in a Title VII

AO 72A
(Rev.8/8
2)

investigation, proceeding or hearing. 42 U.S.C. § 2000e-3(a). Race-based disparate-treatment discrimination and retaliatory discrimination are also actionable under 42 U.S.C. § 1981. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 302 (1994) (explaining that § 1981's prohibition against racial discrimination "applies to all phases and incidents of the contractual relationship, including discriminatory contract terminations"); *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998) (holding that a retaliatory discharge action is cognizable under § 1981).

### a.     Disparate Treatment

To establish a *prima facie* case of racial discrimination, the plaintiff must show that: (1) he was a member of a protected group; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly situated employees who were not members of the protected group were treated more favorably. *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002). Where, as here, there is no direct evidence of disparate treatment, the *McDonnell Douglas* burden-shifting scheme applies. *See Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060 (11th Cir. 1994) (noting that the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies to both Title VII and § 1981 claims). "After the plaintiff proves a prima facie case of discrimination, the defendant need only to produce

12

evidence that there is a legitimate, non-discriminatory reason for the challenged employment action." *Kelliher*, 313 F.3d at 1275. If the employer thus rebuts the presumption of discrimination, it is entitled to summary judgment "unless the plaintiff proffers evidence sufficient to create a genuine issue of material fact that discrimination was actually the reason for the challenged action." *Id.*

For the purposes of the summary judgment motion, Defendant does not dispute that Plaintiff is a member of the protected class, that the corrective action and subsequent discharge constitute adverse employment actions, and that he was qualified for his position. (Br. Supp. Mot. Summ. J. [Doc. 27-2] at 14). Defendant contends that Plaintiff cannot make out a *prima facie* case of race or national origin discrimination, however, because Plaintiff cannot point to a similarly situated non-African-American employee who was treated more favorably. (*Id.* at 5). Defendant further argues that even if Plaintiff were able to establish a *prima facie* case, he cannot overcome Defendant's nondiscriminatory, business-related reason for firing him: his admitted failure to meet his set revenue production standards. (*Id.* at 6-8).

Plaintiff, in response, asserts that two white individuals who were also in the FAIT training program in April 2009 "were given branches, a mentor who was willing to work as a partner, and were not disciplined for their results in 2008 and the

13

beginning of 2009."[6] (P ¶ 48). However, as previously discussed, Plaintiff did not proffer evidence to support this statement or any of his other responses to Defendant's statement of material facts. [*See* Doc. 35, *passim*.] Nor did he present a statement of material facts of his own. [*See* Dkt.] Thus, his allegations regarding the white trainees may not be considered. *See Garland*, 86 F. Supp. 2d at 1199-1200 (requiring that factual assertions and responses to factual assertions will not be considered unless they cite record evidence).

Moreover, the Court finds that the only evidence proffered in relation to the two similarly situated white employees Plaintiff mentions shows that they were, in fact, held to the same standards as Plaintiff and were warned of their under-performance in a like manner. (*Compare* D ¶ 50 *with* D ¶ 41). Those trainees' regional manager also issued them each a Corrective Action and Counseling in April 2009. (D ¶¶ 49-50). Like Plaintiff, both of the white trainees were told that they had not met their February and March production goals, that they had to make up the deficits by the end of June 2009 and fully meet their April, May, and June 2009 production standards, and that failure to do so could result in discharge. (*Compare* D ¶ 39, 41 *with* D ¶ 50). One of the

---

[6]     Those paragraphs preceded by "P" refer to paragraphs in Plaintiff's "Response in Opposition to Defendant's Statement of Material Facts." [Doc. 35].

AO 72A
(Rev.8/8
2)

trainees tendered his resignation on June 12, 2009, and the other tendered his resignation on July 2, 2009. (D ¶¶ 51-52). According to the evidence presented, Plaintiff's treatment differed from that of the two similarly situated white trainees only in that he was fired and the white trainees resigned. (*Compare* D ¶ 39, 41, 44 *with* D ¶ 50-52). The distinction does not support Plaintiff's assertion that Defendant treated him less favorably, and therefore it does not give rise to even an inference of discrimination.

Consequently, the Court finds that Plaintiff has failed to allege any facts that could establish a *prima facie* case of disparate treatment. In the event the District Court disagrees with the undersigned's analysis of Plaintiff's *prima facie* case, the Court discusses the balance of the *McDonnell Douglas* paradigm.

If Bennett had met his *prima facie* case burden, the burden of production would switch to Wells Fargo to demonstrate that its discharge decision was based on legitimate non-discriminatory grounds. *See Kelliher*, 313 F.3d at 1275. It has done so by asserting that Plaintiff was discharged for failing to meet the performance standards set by the Corrective Action and Counseling. (D ¶ 41). As such, the burden switches back to Bennett to demonstrate that the reason asserted by Wells Fargo is pretext for discrimination. *See Kelliher*, 313 F.3d at 1275. Bennett's argument is that he was

15

terminated only after he "complained consistently about discriminatory treatment by Vogel and his disparate treatment as compared to his white counterparts in the Financial Advisor program." [Doc. 35 at 12].

Besides the fact that Bennett's argument about pretext and his response to Defendant's material fact statement contain absolutely no citations to the record, his pretext argument fails to establish a genuine issue of material fact on pretext, for he fails to show that Wells Fargo's proffered reason for dismissing him was false and instead attempts to re-characterize it as something else. In attempting to show that the employer's reasons are pretextual, "[i]f the [employer's] proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007) (quoting *Wilson*, 376 F.3d at 1088) (alterations added). Plaintiff's low production numbers constitute a legitimate nondiscriminatory reason for Plaintiff's termination. Because Plaintiff failed to meet this allegation head on, he has failed to satisfy his summary judgment burden.

Accordingly, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment on Plaintiff's disparate treatment claims be **GRANTED**.

16

### b.    Retaliation

A plaintiff who seeks to prove a Title VII or § 1981 retaliation claim must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).[7]  Defendant contends that Plaintiff cannot establish facts that would allow him to meet prongs one or three.  (Br. Supp. Mot. Summ. J. [Doc. 27-2] at 15).

Plaintiff, in turn, argues that he repeatedly complained about discriminatory treatment by Vogel and that, but for those complaints, he would not have received the Corrective Action or been terminated.  (Br. Opp. Mot. Summ. J. [Doc. 35] at 9; P ¶ 27). Again, Plaintiff cites no evidence to support his claim.  [*See* Dkt.].  Thus, Plaintiff has also failed to establish a *prima facie* case of retaliatory discrimination.[8]

Accordingly, as there is no genuine issue of material fact to be tried in this regard, the undersigned Magistrate Judge **RECOMMENDS** that Defendant's motion

---

[7]     Retaliation claims are also analyzed according to the *McDonnell Douglas* burden-shifting framework.  *Goldsmith v. City of Artmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993).

[8]     Any analysis of pretext in relation to Plaintiff's retaliation claim fails for the same reasons discussed in relation to his disparate treatment claims.

AO 72A
(Rev.8/8
2)

for summary judgment be **GRANTED** as to Plaintiff's retaliation claims.

### B.    Request for Attorneys' Fees

In the reply brief, Defendant "requests its costs in defending this case and also requests it [sic] attorneys' fees incurred in responding to Bennett's untimely and procedurally and substantially defective summary judgment opposition papers." [Doc. 40 at 13-14]. Defendant does not cite any authority for the request. [*See id.*]. Plaintiff did not seek to respond to Defendant's request. [*See* Dkt.].

The undersigned concludes that Defendant is not entitled to attorneys' fees because the request is procedurally improper. The Federal Rules of Civil Procedure require that "[a] request for a court order [] be made by motion." Fed. R. Civ. P. 7(b)(1). The Local Rules further provide that "[e]very motion presented . . . shall be accompanied by a memorandum of law which cites supporting authority." LR 7.1A(1), NDGa. Defendant's request for attorneys' fees in its reply brief does not comply with Rule 7(b)(1) because the reply brief is not a motion. Also, even if the request in the reply brief could be construed as a motion, it does not comply with Local Rule 7.1A(1) because Defendant has not provided a separate memorandum of law "which cites supporting authority." LR 7.1A(1), NDGa. Because Defendant has not made a motion for attorneys' fees or explained to the Court on what basis it might

18

be entitled to such fees, the undersigned **RECOMMENDS** that Defendant's request for attorneys' fees, [Doc. 40 at 13-14], be **DENIED**.

## IV.    CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that: (1) Defendant's motion for summary judgment, [Doc. 27], be **GRANTED**; and (2) Defendant's request for attorneys' fees, [Doc. 40 at 13-14], be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**IT IS SO RECOMMENDED and DIRECTED**, this the 24th day of January, 2012.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)